UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-24-MOC

| | | |
|---|---|---|
| **KEFFER, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **GOLDEN EYE TECHNOLOGY, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on a Motion to Dismiss the Complaint by Defendant Golden Eye Technology, LLC. (Doc. No. 5). Defendant moves to dismiss Plaintiff's claims for breach of contract, negligence, and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA").

For the following reasons, the Defendant's Motion is **GRANTED** as to Plaintiff's claims for negligence and violation of the UDTPA, and these claims will be **DISMISSED**. However, the Court finds that Plaintiff has adequately stated a claim for breach of contract. Therefore, Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's breach of contract claim. Finally, because only the breach of contract claim remains, the Court will dismiss Plaintiff's claim for punitive damages.

I. BACKGROUND

Plaintiff alleges that in 2012 or 2013, Plaintiff engaged Golden Eye to provide video surveillance and monitoring services for Plaintiff's automobile dealership, Keffer Chrysler (the "Dealership"), in exchange for a monthly fee. (Complaint ¶¶ 9–12, Doc. No. 1-1). At the same

1

time, the Dealership purchased the equipment used by Golden Eye in providing its monitoring services, which it has not upgraded since its installation nearly a decade ago. Specifically, Plaintiff alleges that, while never memorialized in writing, Plaintiff and Golden Eye entered into a contract "whereby, in exchange for a monthly fee, Golden Eye agreed to provide [the dealership] with live interactive monitoring services." (Id. ¶ 25).

On July 31, 2022, four to five individuals broke into the Dealership and stole six high-value vehicles and the keys for twenty more over the course of more than 2.5 hours, allegedly causing damages in excess of $300,000.00. (Id. ¶¶ 15–16). Following the break-in and theft, the Dealership's Parts Manager contacted Golden Eye, who allegedly told the manager that "Golden Eye called the CMPD at roughly 4:00 A.M. on July 31, 2022, when its live monitoring employees noticed movement and entry into [the Dealership]." (Id. ¶ 17). Plaintiff alleges, however, that Golden Eye did not contact the CMPD on July 31, and instead covered it up "[a]fter the fact" by "falsely claiming that it had contacted the police and ignoring Keffer Chrysler's requests for documents and information[,]" (id. ¶ 34), while also terminating its security monitoring services with the Dealership. (Id. ¶ 19).

As a result of the incident on July 31, 2022, Plaintiff filed this action on December 2, 2022, in Mecklenburg County Superior Court alleging three causes of action against Golden Eye: (i) breach of contract; (ii) negligence; and (iii) Unfair and Deceptive Trade Practices, under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. GEN. STAT. § 75-1.1 et seq.  Plaintiff also seeks punitive damages against Defendant.

As to the breach of contract claim, Plaintiff alleges that the unwritten contract with Golden Eye required that: "(a) [t]he video feed would be monitored at all times when [the] dealership was not open for business; and (b) "[i]n the event of any observed security incident,

2

Golden Eye would promptly contact the CMPD [("Charlotte Mecklenburg Police Department")] to report the incident." (Id. ¶ 26). Plaintiff then alleges that Golden Eye breached the contract by, inter alia: "(a) failing to adequately monitor the video feed from [the] dealership" on July 31, 2022; and "(b) failing to promptly contact the CMPD when Golden Eye's live monitors observed, or should have observed, suspicious activity at [the] dealership[.]" (Id. ¶ 27(a)–(b)). Plaintiff does not allege that Golden Eye was not monitoring the video feed when the incident occurred, nor that Golden Eye actually witnessed the event, triggering the requirement to contact the CMPD.

In support of its negligence claim, Plaintiff alleges that Golden Eye owed Plaintiff a duty of reasonable care in the provision of its video surveillance monitoring services, "including in monitoring [the Dealership's] surveillance live video feed and contacting the police in the event of any observed security incidents." (Id. ¶ 33). Plaintiff then alleges that Golden Eye was negligent by, among other things, "failing to adequately monitor [the Dealership's] live video feed" and "failing to contact police when appropriate[.]" (Id. ¶ 34). Plaintiff further alleges that Golden Eye then attempted to cover up its negligence "[a]fter the fact" by "falsely claiming that it had contacted the police and ignoring Keffer Chrysler's requests for documents and information." (Id. ¶ 34). Plaintiff also makes the conclusory statement that Golden Eye's conduct was "grossly negligent in that Golden Eye acted maliciously, willfully, and wantonly with conscious or reckless disregard for the rights and safety of [the Dealership,]" and seeks punitive damages for the same. (Id. ¶ 35).

Finally, Plaintiff recites the elements of a UDTPA claim but provides no additional supporting facts, other than referencing "[t]he actions and conduct previously alleged therein[,]" and that these "actions and conduct" were "in and affecting commerce[;]" constituted "unfair and

deceptive trade practices in violation of N.C.G.S. § 75-1.1[;]" and directly and proximately caused the Dealership damages in excess of $25,000.00. (Id. ¶¶ 39–40).

Plaintiff initiated this action by filing a complaint in state court, and Defendant removed the action to this Court on January 13, 2023. (Doc. No. 1). Defendant moved to dismiss the Complaint on February 3, 2023. (Doc. No. 5). Plaintiff responded on March 10, 2023, (Doc. No. 8), and Defendant replied on March 24, 2023. (Doc. No. 11). The matter is ripe for disposition.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## III.  DISCUSSION

### a.  Plaintiff's Claims of Negligence and the UDTPA

The Court finds that Plaintiff's claims for negligence and for a violation of the UDTPA are barred by North Carolina's economic loss rule, which provides that "North Carolina law

4

requires courts to limit plaintiff's tort claims to only those claims which are identifiable and distinct from the primary breach of contract claim." Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998)); see also Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Mar. 27, 2017) (holding that North Carolina courts "have long limited the circumstances under which an ordinary contract dispute can be transformed into a tort action" to preserve contracting parties' legitimate expectations). In other words, where a contract exists between the parties, an action in tort must arise from a violation of a distinct duty to the plaintiff and "not a violation of a duty arising purely from 'the contractual relationship of the parties.'" Id. (quoting Roundtree v. Chowan Cnty., 796 S.E.2d 827, 831 (N.C. Ct. App. 2017)). Here, all of Plaintiff's claims stem from the same alleged facts as Plaintiff's breach of contract claim. Thus, the dispute boils down to a difference in contract interpretation. Therefore, the Court finds that the economic loss rule bars Plaintiff's negligence and UDTPA claims.

Additionally, as to the UDTPA claim, the Court further notes that it is well settled that a breach of contract, standing alone, is not sufficient to maintain a UDTPA action. Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 121 (4th Cir. 2021) (stating that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA") (internal references omitted). A party can only maintain a UDPTA action alongside a breach of contract claim if it shows "substantially aggravating and egregious circumstances attending the breach." Id. ("North Carolina courts have consistently held that a party may demonstrate and prove [a UDTPA] claim in conjunction with a breach of contract claim if it can show substantially aggravating and egregious circumstances attending the breach."). Typical

5

examples of "substantially aggravating and egregious circumstances" include actions such as lying and concealing a breach combined with acts to deter further investigation or intentional deception for the purpose of continuing to receive the benefits of an agreement. Id.

Here, the Complaint sets forth conclusory allegations that "[t]he actions and conduct of Golden Eye as previously alleged herein were in and affecting commerce in North Carolina constitute unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1[,]" and that "[a]s a direct and proximate result of Golden Eye's unfair and deceptive trade practices, Keffer Chrysler has been damaged . . . in an amount in excess of $25,000.00 . . ." (Compl. ¶¶ 39–40). Plaintiff fails to specify any acts or conduct by Plaintiff that are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" or have "the capacity or tendency to deceive." Bumpers, 367 N.C. at 91, 747 S.E.2d at 228. Plaintiff also fails to plead any further facts indicating that Golden Eye's allegedly unfair or deceptive actions were "in or affecting commerce" under one of the three narrow exceptions allowed for a plaintiff-business under the UDTPA. See Exclaim Mktg., LLC, 134 F. Supp. 3d at 1020. Additionally, Plaintiff fails to allege how "[t]he actions and conduct of Golden Eye as previously alleged herein" (Compl. ¶ 39) proximately caused an actual injury to Plaintiff. These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a 12(b)(6) motion. See Ashcroft, 556 U.S. at 678.

Even assuming, arguendo, that the alleged unfair and deceptive conduct was Defendant's alleged misrepresentation that it called CMPD after the robbery occurred and that Defendant failed to turn over requests for documents (see Compl. ¶ 35), Plaintiff still fails to allege—and cannot possibly allege—that this conduct was the proximate cause of an actual injury to it. This alleged "cover up" happened after the cars were already stolen, so the damage,

6

if any, was already done. (See Compl. ¶ 35 (alleging that the "cover up" occurred "[a]fter the fact[.]")). Accordingly, Plaintiff cannot show proximate cause, and thus cannot sufficiently plead a UDTPA claim.

### b. Plaintiff's Claim for Breach of Contract

Next, as to Plaintiff's breach of contract claim, given the lenient pleading standards under Iqbal and Twombly, the Court finds that Plaintiff has alleged sufficient facts to allege a claim for breach of contract.

### c. Plaintiff's Claim for Punitive Damages

Finally, since only the breach of contract claim remains, the Court dismisses Plaintiff's claim for punitive damages. See N.C. GEN. STAT. § 1D-15(d) (stating that "[p]unitive damages may not be awarded solely for breach of contract").

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss (Doc. No. 5) is **GRANTED** as to the following claims: negligence and violation of the North Carolina Unfair and Deceptive Trade Practices Act, and the claim for punitive damages. However, the Motion to Dismiss is **DENIED** as to Plaintiff's breach of contract claim.

Signed: April 7, 2023

Max O. Cogburn Jr
United States District Judge